By the Court.—Sedgwick, J.
The defendants sold one Scranton ten instruments, purporting to have been executed by The Vicksburg, Shreveport and Texas Railroad Company, for $1,800. Each of these certified that the railroad company was indebted to John Ray, or bearer, for value received “in the sum of either 225 pounds sterling, or 1,000 dollars lawful money of the United States of America, to wit, 325 pounds sterling, if the principal and interest are payable in London, and 1,000 dollars lawful money of the United States of America, if the principal and interest are payable in New York or New Orleans,” which the company promised to pay with interest at 8 per cent, per annum, half-yearly. It further provided, “that the president of said company is authorized to fix by his endorsement •the place of payment of the principal and interest in conformity with the tenor of the obligation.”
Endorsed on each instrument were the words, “I hereby agree that the within bonds and the interest coupons thereto attached shall be payable inC. G. Youkg, President.” It is clear that the maker of the instruments only authorized the president to fill in the blank for the place of payment.
Therefore, if you suppose that the instruments went *306 into the hands of innocent holders for value, there is no presumption that they were authorized to fill in that "blank.
These instruments were not negotiable. It is a necessary quality of negotiable promissory instruments that, they should be for the payment of a sum certain. It-must be for a “fixed and certain amount, and not for a variable amount ” (Story on Prom. Notes, §§ 20 and 21). “ There should be entire certainty and precision as to-the amount to be paid. The reason of this is especially obvious, for if the note is to represent money effectually, there must be no chance of mistake as to the amount of money, of which it thus takes the place and performs the office” (1 Parsons on Notes and Bills, p, 37). This is the opinion of Chancellor Walworth in Henchel v. Mahler, 3 Duer, p. 431).
The company had the option to pay either $1,000 or £225 sterling ; which it chose to pay had not been determined. There is a material difference whether such a matter is at the option of the holder or of the maker. Irrespective of this, however, the bond, so to call it, had an uncertain denomination. £225 in London are not the equivalent of $1,000 in BTew York or New Orleans. Bor would $4.44 buy a pound sterling in this country.
The instruments not being negotiable, and not having been issued by the company, but having been feloniously taken from it, the defendants had no title to them or to the paper on which these were printed, and gave none to Scranton. Whether they were choses in action non-negotiable, or chattels, the defendants, when they sold and delivered to Scranton, impliedly warranted that they had title to them.
The papers having been originally stolen from the railroad company before delivery, there was a breach of that warranty, and Scranton had a right to recover damages (Scranton v. Clark, 39 N. Y. 225; McCoy v. Artcher, 3 Barb. 327; Thomas v. Bartow, 48 N. Y. *307 197; Ketchum v. Bank of Commerce, 19 N. Y. 503; 2 Parsons on Notes, 37 and 39).
This right of action passed to the plaintiff by assignment of Scranton.
The facts already stated were found upon the trial, but it remains to examine the exceptions taken for defendants.
The exception was taken that there was no proof that at the time of the sale the defendants made any representation whatever to Scranton, and that, therefore, there was a failure of proof of the cause of action stated in the complaint.
The complaint stated that the defendants represented that the instruments sold were the bonds of the railroad company, and had been issued by, and were binding upon it, and that in consideration thereof, and relying upon, such representations, Scranton bought. If the proof had supported these averments—that is, if the defendants had by act or words affirmatively made the representations stated in the complaint—there might be room for the plaintiff to say, that in law these representations constituted a warranty that the instruments were as represented. The reverse, however, is not so clear,, viz.: that if there is an implied warranty of title from the fact of sale, proving a sale will prove that representations were made. On the whole, I think that proof that a man contracts or agrees that a certain fact exists, does not of itself show that he asserts it to exist. Such might be his contract, although he might consistently assert that he neither knew nor believed that the fact existed. If these averments were indispensable to his cause of action, I think the complaint should have been dismissed. Striking these averments and the others referring to them from the complaint, what is left would .show that a sale by defendants to plaintiff, of non-negotiable instruments had been made for $1,800, that the fact was that the defendants had no title to *308 transfer them, and- that, giving no cause of action against the railroad company, they were worthless. This substantially states the cause of action that was really proved. The learned judge was correct in not dismissing the complaint upon the ground here discussed.
The exception taken to the refusal of the court to admit as evidence the submission to a committee of the difference between Scott, Zerego & Go. and these defendants, cannot be sustained. Scott, Zerego & Go. assumed to have bought the instruments here in controversy from the defendants, instead of Scranton having bought them on his own account. They made a claim on defendants. It was this difference which was submitted and decided in favor of the defendants, as was asserted by the offer now discussed. Unless Scranton was in some way bound by this, it could not affect his cause of action. There is no proof to show that he took part in the submission. It was left to the jury to say whether he was principal in the purchase, or whether he acted for Scott, Zerego & Go. The jury have found he was principal. It follows that the submission and decision were immaterial and irrelevant matters, and should have been excluded.
There was no question raised as to the measure of damages. The point made, that there was no proof of damage, is not valid. The evidence does not sustain it.
There was sufficient evidence of the identity of the bonds, at the different stages of the proof, to take the case to the jury.
The judgment should be entered upon the verdict for plaintiff, with costs.